<div align="center">

`UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
Eastern Division

</div>

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Case No. 10-15249-HJB |
| **ROBERT E. LOCKWOOD, II,** | ) |  |
| Debtor | ) |  |
|  | ) |  |

**MEMORANUDUM IN SUPPORT OF MASSACHUSETTS DEPARTMENT OF REVENUE'S MOTIONS TO CONDUCT RULE 2004 EXAMINATIONS**

**TO THE HONORABLE HENRY J. BOROFF,
UNITED STATES BANKRUPTCY JUDGE:**

On May 13, 2010 (the "Petition Date"), Robert E. Lockwood, II ("Lockwood") filed the voluntary petition for relief under Chapter 11 of the Bankruptcy Code commencing the above-captioned case. The Massachusetts Department of Revenue ("MDOR") is a creditor of Lockwood, and has filed a proof of claim for unpaid pre-petition Massachusetts taxes in excess of $2 million. MDOR submits this memorandum in support of its motions, pursuant to Fed. R. Bankr. P. 2004(a) and (d), for entry of orders authorizing the examination of, and the production of the documents by, the following eight (8) entities, and also Lockwood, with respect to the acts, conduct, property, financial condition, administration of the estate, and source of assets to be used in consummating a plan of reorganization for Lockwood:

Blackstone Financial Holdings, LLC;
Harbor House of Gloucester, LLC;
Boston Financial Corporation;
Connect Plus International Corporation;
89 West Street Realty Trust;

Assembled Property Interests, LLC;
Combined Interests Realty Trust;
Goat Hill, LLC; and
Lockwood, both in his capacity as keeper of the records, and in his capacity as an owner, officer, director, managing agent, beneficiary, or party in actual control, of these entities.

In support of these motions, MDOR relies on the affidavit of Andrew Zaikis and the exhibits attached thereto ("Zaikis Aff."), to show that Lockwood has used, and continues to use, these eight entities, as well as others, to divert funds to his own personal use in a manner that has the effect of concealing his true sources of income.  As summarized below, the Zaikis Aff. describes some of the salient aspects of some of these convoluted maneuverings by Lockwood as far as they are now known to MDOR.  The objective of these Rule 2004 examinations is to obtain additional information about these transactions, and to identify additional entities that Lockwood used and continues to use for this purpose.

Another objective will also be furthered by these examinations.  Paragraph 18 of the Statement of Financial Affairs requires Lockwood to identify, by name, address, federal id. number, and nature of the business "all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full or part time." In answering this question, Lockwood identified Connect Plus International Corporation ("CPIC"), Harbor House of Gloucester, LLC ("Harbor House"), and Boston Financial Corporation ("BFC"), and also stated, in Schedule B, ¶ 13, that he owns 2000 shares of CPIC stock.

However, Lockwood did not disclose whether he is "an officer, director, partner, or managing executive of" these entities, nor did he identify Blackstone Financial Holdings, LLC or Goat Hill, LLC as business in which he held an interest.  In addition, the pre-petition transfers to creditors listed in paragraph 3 of the Statement of Financial Affairs were actually payments made from a BFC account, not by Lockwood.  [Zaikis Aff. ¶ 13]  The examinations requested by MDOR will therefore also assist the proper administration of this case, by inquiring into facts about Lockwood's financial and business operations that he has failed to disclose.

**Blackstone, Goat Hill, LLC, and Boston Financial Corporation**

Blackstone was organized and registered as a Massachusetts limited liability company on April 27, 2009. [Zaikis Aff. ¶5, Ex. A, pp. 1-4] Lockwood was initially listed, along with James Howell ("Howell") as a person authorized to file documents with the Corporations Division, but his name was removed in October 2009. [Zaikis Aff. ¶5, Ex. A, pp. 5-6] Howell is listed as the manager. When MDOR took Howell's deposition, he testified that he lived rent-free with Lockwood at 89 West Street, Beverly; he was not paid for any work he performed as manager of Blackstone; he did not know where Blackstone's records were located; and Lockwood decided who would get paid and how much and told him what checks to write from the Blackstone accounts. [Zaikis Aff. ¶ 44]

Blackstone is a participant in financial transactions with other entities with which Lockwood is involved. One such entity is Goat Hill, LLC.

In 2005, Lockwood's friend Conti Coluntino ("Coluntino") became involved in the operations of the Goat Hill Grille, a restaurant and bar located at 90 Rantoul Street in Beverly, Mass., after his offer to purchase the business out of bankruptcy was approved. [Zaikis Aff. ¶ 41] The operating entity, Goat Hill, LLC, was organized in 2005, and Coluntino has been named as the manager since then. [Zaikis Aff. ¶ 41, Ex. A, pp. 144-148] When MDOR took Coluntino's deposition, Coluntino testified that Lockwood is an authorized signatory on the Goat Hill, LLC, bank accounts and all bank statements are sent to him; Coluntino does not know why cash receipts are not deposited into those accounts; Lockwood keeps all books and records relating to the business operations; and Lockwood makes electronic transfers from the Goat Hill, LLC accounts. [Zaikis Aff., ¶ 43] Prior to October 2009, the books and records of Goat Hill,

LLC, were kept by Lockwood, and Lockwood made withdrawals from its operating account; Coluntino did not have access to the account, and could not explain any of the electronic withdrawals and transfers. Since October 2009, Blackstone has managed all of Goat Hill, LLC's financial affairs, but Coluntino does not know Blackstone's address, has no written agreement with Blackstone, has no record of these transactions, and does not know who picks up the cash receipts. [Zaikis Aff. ¶ 43] Howell (the nominal manager of Blackstone) testified in his deposition that he did not have any records relating to the financial relationship between Goat Hill LLC, and that Lockwood kept those records. [Zaikis Aff., ¶ 44]

Based, in part, on this testimony, MDOR levied on and seized the assets of Goat Hill, LLC, to partially satisfy its tax claim against Lockwood. On April 14, 2010, Goat Hill,. LLC filed a voluntary petition under Chapter 11 in this court. (*In Re Goat Hill, LLC.,* Ch. 11 No.10-14021-JNF) [1] MDOR then served a motion to dismiss that case based on the foregoing facts [Zaikis Aff., ¶ 45, Ex. A. pp. 149-164]; six days later Lockwood filed the petition commencing this case, and listed Goat Hill, LLC, as an "Alleged Affiliate" on the petition. No objection to MDOR's motion to dismiss was filed, and on July 19, 2010, Goat Hill, LLC assented to MDOR's motion to dismiss. [Zaikis Aff., ¶ 45]

Another such entity is Boston Financial Corporation ("BFC"). On June 23, 2008, BFC

---

[1] Pursuant to Fed. R. Evid. 201(d), MDOR requests the Court to take judicial notice of the facts relating to the Goat Hill, LLC and the BFC bankruptcy proceedings referred to herein, which are contained in the records of the Bankruptcy Court and are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy through the ECF filing system. Elliott v. Papatones (In re Papatones),. 143 F3d 623 (1st Cir. 1998) (bankruptcy court properly took judicial notice of state court records); In Re Countrywide Home Loans, 384 BR 373 (Bankr.W.D. Pa 2008) (bankruptcy court took judicial notice of relevant events occurring in other bankruptcy cases). (Although not relevant to MDOR's present motions, it should be noted that an evidentiary hearing has been scheduled for September 23, 2010, on objections to BFC's motion for entry of final decree, and on the motion to dismiss BFC's case filed by Michael Stewart, objected to by BFC.)

filed a voluntary petition commencing a case under Chapter 11 of the Bankruptcy Code (*In Re Boston Financial Corporation*, Ch. 11. No. 08-14571-FJB). On March 3, 2009, a second amended plan of reorganization and disclosure statement were filed jointly by BFC's official creditor's committee and by a third party proponent Connect Plus International Corporation ("CPIC"), another entity directed and controlled by Lockwood (as discussed further below). On May 13, 2009, the Court entered an order confirming the BFC Plan. As provided in the BFC Plan, and as shown on filings with the Massachusetts Secretary of State, Lockwood is the president, treasurer, chief financial officer, and sole director of BFC. [Zaikis Aff. ¶ 7, Ex. A, pp. 9-12][2]

MDOR previously requested and obtained an order authorizing a Rule 2004 examination of Frank Saia ("Saia") as the agent or employee of BFC and Blackstone, and sought to obtain from Saia documents related to the financial transactions and relationship between Blackstone and BFC. At his deposition, Saia testified that he was the sole signatory on the Blackstone bank accounts and was also an officer and signatory on the accounts of BFC. He also testified that he was not authorized to produce any of the records of Blackstone or of BFC, and that Lockwood used a "Quickbooks" accounting system to maintain these records. [Zaikis Aff., ¶¶ 8, 9(a), 10]

Saia testified that Lockwood determined who would be paid, when, and how much from the Blackstone and BFC accounts. [Zaikis Aff., ¶9(d)] At Lockwood's direction, Saia deposited checks payable to BFC into Blackstone accounts, and deposited non-BFC-client checks into BFC accounts. [Zaikis Aff., ¶9(h),(j),(n)] Saia had no knowledge of whether records were kept of money orders purchased with checks drawn on BFC accounts and made payable to

---

[2] Although not directly relevant to MDOR's motions, it should be noted that a hearing has been scheduled for September 23, 2010, on objections to BFC's motion for approval of final account and on motions to dismiss the case.

"cash." [Zaikis Aff., ¶9(c)] While Lockwood was not an authorized signatory on the Blackstone or the BFC accounts, Lockwood had a debit card on these accounts, and he used the debit card to withdraw cash from the BFC account and make online debit payments from the Blackstone and BFC accounts, including payments to credit card accounts and payments to Lockwood's two sons from the BFC accounts. [Zaikis Aff, ¶¶ 9(e),(f),(m)]

A Rule 2004 examination of Blackstone, Goat Hill, LLC, and BFC will enable MDOR to determine the extent to which Lockwood has used, and continues to use, Blackstone as an undisclosed agent to divert funds from the Goat Hill restaurant and BFC for his personal benefit.

**Connect Plus International Corporation, Assembled Property Interests, LLC, and Combined Interests Realty Trust (David Arcuri, Trustee)**

As noted above, Lockwood also conducts business through Connect Plus International Corporation ("CPIC"). On October 8, 2009, CPIC first registered in Massachusetts as a foreign corporation. The registration document states that CPIC was organized as a Delaware corporation on January 16, 1950; identifies Lockwood as the sole officer and director; and states that CPIC's offices are located at 90 Rantoul Street, Beverly, Mass., which is the address of the Goat Hill restaurant. [Zaikis Aff., ¶16, Ex. A, pp. 18-25]

Documents recorded at the Worcester Registry of Deeds show that CPIC acquired by foreclosure two parcels of real property in Worcester, and holds a third mortgage and an assignment of rents on another parcel.

a.      157 Shrewsbury Street:   On October 28, 2009, CPIC took title to real property located at 157 Shrewsbury Street, Worcester, by foreclosure of a second mortgage granted by Nicholas Fiorillo as trustee of the 157 Shrewsbury Realty Trust, subject to a first mortgage held by Webster First Bank. [Zaikis Aff., ¶ 17] According to Mr. Fiorillo, a restaurant/commercial tenant on the first floor was paying $5,000 per month in rent, and each of the four residential

Case 10-15249    Doc 61    Filed 08/23/10    Entered 08/23/10 18:19:39    Desc Main
            Document      Page 7 of 13


tenants on the second floor were paying $800 per month in rent. [Zaikis Aff., ¶ 18] The bank account records of Blackstone and BFC show deposits of checks for $5,050 issued by Tre Baldini, Inc. d/b/a Piccolo's Restaurant, with its address shown as 157 Shrewsbury Street, payable to Blackstone but deposited in the BFC account. [Zaikis Aff. ¶ 24, Ex. A. pp.67,68,69,70]  Mr. Fiorillo also states that payments are in arrears on the first mortgage. [Zaikis Aff., ¶ 18]

After the Petition Date, in July and August 2010, Lockwood organized a new limited liability company named Assembled Property Interests, LLC ("Assembled") with himself as the manager. [Zaikis Aff., ¶ 19] Then Lockwood, in his capacity as president of CPIC, conveyed title to the 157 Shrewsbury Street property from CPIC to Assembled, and simultaneously, in his capacity as manager of Assembled, caused Assembled to grant a mortgage on the 157 Shrewsbury Street property to David Arcuri as trustee of Combined Interests Realty Trust ("Combined"), a newly-created trust formed in June 2010, to secure payment of $280,500. [Zaikis Aff. ¶ 19]   These transactions have not been disclosed in this proceeding and have not been approved by this Court.

      b.     <u>92-94 Ward Street</u>:  On August 28, 2009, CPIC took title to real property located at 92-94 West Street, Worcester, by foreclosure of a second mortgage granted by John Pacy, subject to a first mortgage held by Bank of America. [Zaikis Aff. ¶ 20]  According to Mr. Pacy, four residential tenants pay $625, $700, $800, and $850 per month in cash. Mr. Pacy also states that payments are in arrears on the first mortgage. [Zaikis Aff. ¶ 21]

The bank account records of Blackstone and BFC show deposits of checks for $850 issued by Stephen Michaels and Seth Braday, with their address shown as 94 Ward Street #3, payable to Blackstone but deposited in the BFC account. [Zaikis Aff. ¶ 24, Ex. A. pp.71,72,]

Other checks in the amount of $800, $700. and $580 marked "rent" were also deposited in a similar fashion, although the rental premises cannot be identified from the face of the checks. [Zaikis Aff., ¶24, Ex. A. pp. 73-78]

      c.      <u>55 Pearl Street</u>:  Title to the real property at 55 Pearl Street, Worcester, was acquired for a stated purchase price of $750,000 by 55 Pearl Street Development, LLC ("Development") on January 16, 2008. [Zaikis Aff. ¶ 22]   Development is a limited liability company organized and managed by Frank D. Kirby, Lockwood's attorney in this case. On March 20, 2009, Kirby as manager of Development granted a third mortgage on the 55 Pearl Street property to CPIC, to secure the payment on or before March 17, 2010 of $70,000; this mortgage document states that it is subject to a first mortgage to Digital Federal Credit Union ("Digital") and to a second mortgage to Mark Winiker. [Zaikis Aff. ¶ 22]   By instruments recorded on December 8, 2008, and March 20, 2010, Development assigned the leases and rents from 55 Pearl Street twice, first to Digital and then to CPIC; no document explaining or authorizing this duplicative assignment appears of record. [Zaikis Aff., ¶ 22]

      The collateral assignments of rent to Digital and CPIC both identify Worcester Restaurant Associates, LLP, as a tenant at the 55 Pearl Street property. [Zaikis Aff., ¶ 22]  The bank account records of BFC show deposits of checks for $2,610 and $7,000 issued by Worcester Restaurant Associates, LLP, with its address shown as 55 Pearl Street, payable to BFC. [Zaikis Aff. ¶ 24, Ex. A. pp. 65,66]

      In addition to these deposits in the Blackstone and BFC accounts of CPIC rental receipts from these three properties, other deposits were made to these accounts of rental receipts from 89 West Street, Beverly, as discussed below.  Furthermore, payments were made from these same Blackstone and BFC accounts to the holders of the senior mortgages on the above-described

- 8 -

three properties, i.e., to Webster First Bank, Bank of America, Mark Winiker, and Digital. [Zaikis Aff., ¶ 25]  Saia testified that Lockwood authorized and directed these payments.  [Zaikis Aff., ¶ 26(e)]

A Rule 2004 examination of CPIC (and also of Assembled and Combined) will enable MDOR to determine whether CPIC received and continues to receive any rent from the 157 Shrewsbury Street property, the 92-94 Ward Street property, and the 55 Pearl Street Property; the disposition of such rent; the financial relationships between these entities; the source of and disposition of the $280,500, referred to in the Assembled-Combined mortgage, which appears to have been loaned to Assembled; the identity of the beneficiaries of Combined, and the extent to which Lockwood's interest is or is not adversely affected by the transfer of title from CPIC to Assembled; and the extent to which Lockwood has used, and continues to use, CPIC to divert assets to his own personal benefit.   MDOR also intends to inquire about Lockwood's use of CPIC to conduct transactions with other entities.

### 89 West Street Realty Trust (Frank D. Kirby, Trustee)

Lockwood's residential address is 89 West Street, Beverly, where he lives in an ocean-front house appraised at $3,989,600 by the City of Beverly. [Zaikis Aff. ¶ 28]  Title to the 89 West Street property is held by the 89 West Street Realty Trust; the trustee of this trust is Frank D. Kirby, Lockwood's counsel in this case, who was appointed as trustee on October 29, 2009, with the consent of the two beneficiaries of the trust, Robert E. Lockwood, III, and Thomas Forbes Lockwood, Lockwood's two sons.  [Zaikis Aff. ¶¶ 28, 29, Ex. A, p. 95]  Lockwood testified at the Section 341 meeting that part of the residential premises at the 89 West Street property are rented to college students.  [Zaikis Aff. ¶ 34] Theresa Gentile, the parent of a local college student, states that she has written rent checks in the amount of $2,750 per month for her

- 9 -

son and his friends to both the 89 West Street Realty Trust and Blackstone. [Zaikis Aff. ¶ 31]

Saia testified that Kirby, in his capacity as trustee, has entered into an agreement with BFC whereby Saia deposits these rent checks into BFC accounts. [Zaikis Aff. ¶ 32] Even before Kirby's appointment (October 2009), from August 2009 to May 2010, approximately $27,600 in rental receipts from the 89 West Street property were deposited into the BFC accounts. [Zaikis Aff. ¶ 33] As noted above, Saia also testified that Lockwood authorizes and directs Saia to make payments from the BFC accounts to his two sons. . [Zaikis Aff, ¶ 9(m)] In February and March 2010, seven checks totaling $5,700 were issued to Lockwood's two sons from the BFC account. [Zaikis Aff. ¶ 34] Checks totaling $3,870.71 were also issued in February and March 2010 from the BFC accounts to Ray C. Green, Inc., the holder of the second mortgage on the 89 West Street property. [Zaikis Aff. ¶ 34] Lockwood has listed Ray C. Green, Inc. as a creditor in the amount of $800,000 based on a "guaranty of notes."

Apart from these determinations, MDOR has been unable to trace the rental deposits in detail, and the deposits are not made on a consistent and regular basis. Examination of the 89 West Street Realty Trust and Kirby as trustee would enable MDOR to more accurately identify the source and disposition of the rental payments, and to determine the extent to which Lockwood has used, and continues to use, the 89 West Street Realty Trust to divert assets to his own personal benefit.

**Harbor House of Gloucester, LLC and Goat Hill, LLC**

Harbor House of Gloucester, LLC ("Harbor House") was organized in 2003, and Lockwood has been the manager of Harbor House since 2007. [Zaikis Aff. ¶ 36] On August 9, 2004, Timothy A. Murphy, the owner of the Goat Hill restaurant business (operating as T.A.M., Inc.), conveyed to Harbor House title to 90 Rantoul Street, Beverly -- the business premises of

- 10 -

the Goat Hill restaurant -- and on the next day commenced a case under chapter 11 for T.A.M., Inc. [Zaikis Aff. ¶ 37]   As noted above, in 2005 the Bankruptcy Court approved an offer by Conti Coluntino to purchase the Goat Hill restaurant, and the Goat Hill, LLC, was organized as the operating entity.  However, Coluntino has testified that to his knowledge no rent has been paid to Harbor House, the owner and landlord of the premises, since 2005.  [Zaikis Aff. ¶ 38]  As described further below, Coluntino's testimony also shows that Lockwood is in all respects the actual owner of the Goat Hill restaurant.  An examination of Harbor House will enable MDOR to determine whether in fact no rent has ever been paid -- an unlikely proposition -- which if true would tend to support an inference that Lockwood, in his capacity as both the manager of Harbor House and the de facto owner of the Goat Hill restaurant, was the beneficiary of this arrangement.

On the other hand, since Coluntino also testified that he had no knowledge of the financial or operational affairs of Goat Hill, LLC, or the restaurant, an examination of Harbor House will enable MDOR to determine the truth of Coluntino's improbable testimony about non-payment of rent and to trace the disposition of any rental payments that were in fact made. This inquiry is relevant, since the building located at the 90 Rantoul Street property also contains two residential apartment units on the second floor.  [Zaikis Aff. ¶ 38]  Saia testified that Harbor House has an agreement with Blackstone that authorizes Saia to deposit rental checks payable to Harbor House into the Blackstone accounts, and that such deposits were in fact made. [Zaikis Aff. ¶39]  As with the 889 West Street Realty Trust, MDOR has been unable to trace the rental deposits in detail, and the deposits are not made on a consistent and regular basis. [Zaikis Aff. ¶ 40]  Examination of Harbor House would enable MDOR to more accurately identify the source and disposition of the rental payments, to identify any other similar arrangements to which

Harbor House is a party, and to determine the extent to which Lockwood has used, and continues to use, Harbor House to divert assets to his own personal benefit.

### **Lockwood**

Lockwood is actively involved in the management, operation, and control of the eight entities named above. According to Howell, Lockwood controls Blackstone; according to Coluntino, Lockwood controls Goat Hill; according to Saia and the BFC plan, Lockwood controls BFC; according to documents of record, Lockwood controls CPIPC, Harbor House, and Assembled; and Lockwood lives rent free in property owned by 89 West Street Realty Trust of which his attorney is the trustee and his sons are the beneficiaries. Lockwood is in possession of the books and records of Blackstone, Goat Hill, and BFC, and it is reasonable to infer that he may be in possession of the books and records of the other entities, including the Combined trust and the 89 West Street Realty trust. An order authorizing examination of Lockwood, which also directs him to produce the books and records of these entities, will enable MDOR to ascertain the source of assets available to fund a plan of reorganization and make other determinations relevant to the administration of this case.

In conclusion, Rule 2004(a) authorizes the Court to order an examination of any entity to locate assets in which a debtor holds an interest or which may be available to consummate a plan of reorganization, and Rule 2004(d) authorizes the Court to order the examination of the debtor for cause shown and on such terms as the Court may impose. A broad scope of examination is permitted. In re Summit Corp., 891 F.2d 1, 5 (1st Cir. 1989); In re Table Talk, Inc. 51 B.R. 143 (Bankr. D. Mass. 1985); In re GHR Energy Corp., 33 B.R. 451 (Bankr. D. Mass 1983); In re GHR Companies, Inc., 41 B.R. 655 (Bankr. D. Mass. 1984). In this case, MDOR seeks to examine these eight entities in order to identify assets that are in fact under Lockwood's control

and that can be used to fund a plan of reorganization.  As described above, MDOR has established ample grounds to warrant examination of these entities.

For the foregoing reasons, MDOR respectfully requests that this Court enter orders allowing MDOR's motions and authorizing MDOR to conduct examinations and request production of documents pursuant to Fed.R.Bankr.P. Rule 2004.

>                              Respectfully submitted,
>                              NAVJEET K. BAL, COMMISSIONER
>                              MASSACHUSETTS DEPARTMENT OF REVENUE
>
>                              By her attorneys,
>
>                              */S/  Jeffrey S. Ogilvie*
>                              Jeffrey S. Ogilvie (BBO 377815)
>                                  *Counsel to the Commissioner*
>                              Massachusetts Department of Revenue
>                              Litigation Bureau, PO Box 9565
>                              100 Cambridge Street, 7th Floor
>                              Boston, MA 02114-9565
>                              (617) 626-3223

Date:  August 23, 2010         ogilviej@dor.state.ma.us